UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:22-CV-11364-RWZ

DJANINE DA VIEGA

v.

SANTANDER BANK; JOSE GOMEZ;
JOSE DIAZ; and KIM LOPEZ

MEMORANDUM & ORDER

September 21, 2023

ZOBEL, S.D.J.

Plaintiff Djanine da Viega asserts ten claims[1] against Defendants, her former employer, Santander Bank ("Santander"), and three of its agents, Jose Gomez ("Gomez"), Jose Diaz ("Diaz"), and Kim Lopez ("Lopez"), arising out of her employment and termination. Docket # 11. Defendants move to dismiss with prejudice Counts I, II, III, V, IX, and X pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted. Docket # 12. For the reasons set forth below, Defendants' motion is ALLOWED, and the claims dismissed without prejudice.

---

[1] Wrongful discharge in violation of public policy (Count I); breach of contract (Count II); breach of implied covenant of good faith and fair dealing (Count III); employment discrimination on the basis of race and national origin in violation of M.G.L. c. 151B, § 4 (Count IV); violation of civil rights under M.G.L. c. 12, Section 11I (Count V); conspiracy with racial animus in violation of 42 U.S.C. § 1985(3) (Count VI); conspiracy to hinder the provisions of equal protection, exercise of rights, and privileges in violation of 42 U.S.C. § 1985(3) (Count VII); action for neglect to prevent interference with civil rights in violation of 42 U.S.C. § 1986 (Count VIII); defamation (Count IX); and interference with contractual or advantageous business relations (against Defendants Gomez, Diaz, and Lopez only) (Count X).

1

I.      **Factual Background**

The following facts are recited as alleged in the Amended Complaint ("Am. Compl."). The Court accepts them as true for the purpose of resolving this motion. See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52-53 (1st Cir. 2013).

Santander is a commercial bank doing business in Massachusetts. Am. Compl. ¶ 3. During the relevant period, Gomez, Diaz, and Lopez were employees of Santander. Id. ¶¶ 4-6. Specifically, Gomez was a "District Executive," and Lopez, "an operations manager."[2] Id. ¶¶ 4, 6.

Plaintiff, a Massachusetts resident, joined Santander as a Customer Service Representative in February 2014. Id. ¶¶ 2, 8. Six months later, Plaintiff was promoted to Branch Manager at Santander's Uphams Corner branch. Id. ¶ 8. Approximately three years later, she relocated to Santander's Brockton branch. Id. ¶ 9.

The Brockton branch "lacked...a security guard and glass protection for the teller line." Id. ¶ 11. Plaintiff "raised this concern on many occasions with Defendants," but they "did nothing." Id. ¶¶ 11-12. In May 2021, "in addition to several other times," Plaintiff asked the branch's "District Manager, Jose"[3] for a security guard, to which he "stated he would look into it and get back to [her]" but "never did anything." Id. ¶ 12. "The issue of lack of adequate security...extended to Santander's ATMs . . ." Id. ¶ 34. Gomez "threaten[ed] that she should not mention the lack of proper or adequate security at its Brockton branch ATM." Id. ¶ 36.

The Brockton branch was robbed at gunpoint on or about July 7, 2021 while Plaintiff was working there. Id. ¶ 13.

---

[2] No title is provided for Defendant Jose Diaz.
[3] The Amended Complaint does not make clear whether the branch's "District Manager, Jose" is one of the Defendants, Jose Gomez or Jose Diaz.

2

On November 17, 2021, Plaintiff received a written warning from Diaz following the "operation results from an audit," whereas "all the other manager(s) mentioned on the final report about the alleged errors . . . were treated differently." Id. ¶ 14.

On December 17, 2021, Plaintiff was notified in a meeting with Gomez and an HR representative that her employment was being terminated "due to [her] failure to perform dual control tasks as per company policy and procedure." Id. ¶ 15. Plaintiff's co-worker, "Alyssa Gibson, who performed the dual control task" with her and signed documentation signifying compliance, was not terminated. Id. ¶ 17. Alyssa[4] Gibson "is white," and Plaintiff is "African-American" and "Cape Verde[an]." Id. ¶ 18.

Plaintiff applied for "Unemployment benefits/compensation" on or about December 18, 2021. Id. ¶ 21. On or about January 23, 2022, she was "notified by Unemployment that she didn't qualify for payment." Id. ¶ 22. According to its "responses to the Unemployment questionnaires, Santander represented [to the Massachusetts unemployment authorities] that Plaintiff was terminated due to misappropriation or mishandling of ATM funds." Id. In addition, "Defendants published some information to [] Plaintiff's co-workers and some other employees . . . falsely stating that [she] misappropriated Santander's ATM funds" and "represent[ing her] as a thief . . . a rogue and a dishonest person unfit for the job of a banker." Id. ¶ 27.

Plaintiff asserts that "Santander's reason for terminating [her] employment was a fabrication, pretextual and a cover-up for intentional discrimination and retaliation against [her]." Id. ¶ 16. She contends that she was "subjected to intolerable humiliations, retaliations, harassments and intolerable acts of discriminations" during

---

[4] The Amended Complaint uses both "Alyssa" and "Alysa" throughout. Id. ¶¶ 17-18, 33.

her employment and "ridiculed and treated with disparity because of her ethnicity, race and national origin." Id. ¶¶ 23-25.

She further asserts that "Santander . . . breached its employment contract with [her] . . . violated the implied covenant of good faith and fair dealing . . . [her] civil rights and the employment and discrimination laws . . ." Id. ¶ 37.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. For purposes of a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Rodríguez-Reyes, 711 F.3d at 52-53. Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## III. Discussion

### a. Count I: Wrongful Discharge in Violation of Public Policy

Under Massachusetts law, "an employer may lawfully terminate a relationship with an at-will employee at any time—for any reason, for no reason, and even for a reason that might be seen by some as unwise or unkind." See Murray v. Warren Pumps, LLC, 821 F.3d 77, 89 (1st Cir. 2016) (citing King v. Driscoll, 418 Mass. 576, 582

4

(1994)). A limited exception to this general rule exists when employment is terminated contrary to a clearly established public policy. See Murray, 821 F.3d at 89. Under the narrow exception, "redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Id. (citations omitted).

Beyond these recognized categories, the public policy exception may extend in some "exceptional cases" to employees "terminated for performing important public deeds, even though the law does not absolutely require performance of such a deed." Flesner v. Tech. Commc'ns Corp., 410 Mass. 805, 811 (1991). It is well established, however, that the "exception does not protect at-will employees from termination for performing generally socially desirable duties or for raising workplace complaints about internal company matters." See Murray, 821 F.3d at 89-90; see also Butler v. Shire Human Genetic Therapies, Inc., No. 16-11692-MLW, 2017 WL 1007291, at *5 (D. Mass. March 15, 2017). Whether a retaliatory firing violates public policy is a question of law. See Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992).

Here, Plaintiff's wrongful termination claim is based on the public policy exception, which she asserts on two grounds. The Court addresses each in turn.

First, Plaintiff alleges that she was "discriminatorily terminated . . . as the manager at [Santander's Brockton] branch . . . in violation of [G. L. c. 151B]." Am. Compl. ¶ 49. Because Chapter 151B affords Plaintiff a statutory remedy for Defendants' alleged conduct, an independent action for wrongful discharge based on discrimination is barred by Chapter 151B's exclusivity provision. See Dyer v. E. Coast

5

Diners, LLC, 33 F. Supp. 3d 82, 90 (D. Mass. 2014) (citing Ahanotu v. Massachusetts Turnpike Authority, 466 F. Supp. 2d 378, 388-89 (D. Mass. 2006) ("Chapter 151B . . . provides the comprehensive and exclusive statutory scheme for resolving employment discrimination claims under Massachusetts Law.")).

Second, Plaintiff alleges that she was unlawfully terminated for "refus[ing] to lie or to suppress information regarding [Santander's] inadequate . . . security . . . [,]" Am. Compl. ¶ 50, and "reporting on [it] for the employees and . . . customers . . . ." Id. ¶ 55; see also id. ¶¶ 53-54. Plaintiff purports that this amounts to termination for "refus[ing] to do what the law forbids," id. ¶ 54, and for "perform[ing] . . . public deeds for . . . the protection of the lives, properties and the safety of Santander" and its "workers[,]" "employees[,]" and "customers, who are members of the public." Id. ¶ 56.

Contrary to Plaintiff's assertion, this case does not fall within the recognized public policy exception protecting employees from termination based on "refusing to do that which the law forbids," since there is no law prohibiting lying about, or suppressing, information regarding the inadequate security of one's employer. Accordingly, in construing the pleading in Plaintiff's favor, the Court understands her to contend that Santander terminating her in retaliation for her internal whistleblowing about its security deficiencies constitutes one of the "exceptional cases" permitting redress for employees discharged for performing important—but not legally mandated—public deeds.

Some such "exceptional cases" involve employees terminated for reporting, or refusing to engage in, conduct which they reasonably believe violates regulations concerning public safety. See, e.g., Mercado v. Manny's T.V. & Appliance, Inc., 77 Mass. App. Ct. 135, 139-41 (2010) (applying public policy exception where employer

6

terminated plaintiff for refusing its directive to install appliances and avoid inspector's truck despite plaintiff lacking statutorily required permits); Falcon v. Leger, 62 Mass. App. Ct. 352, 353 (2004) (applying public policy exception where employer fired plaintiff for refusing to comply with its instructions to interfere with an inspection process because "such conduct amounted to a violation of a clearly established public policy grounded in statutes and regulations . . ."); cf. Wright, 412 Mass. at 473-74 (not an actionable violation of a well-defined public policy to discharge nursing director for repeated internal reports to headquarters regarding managerial deficiencies she believed compromised patient care because no statute applied implicating mandatory reporting under the circumstances). Notably, these cases all involve assertions that the employer's conduct contravenes an *identified regulation* related to public safety. Here, Plaintiff makes no attempt whatsoever to identify a public-safety-oriented regulation that she reasonably believed mandated her reporting or otherwise deemed Defendants' conduct unlawful. To assert an actionable violation of well-defined public policy, Plaintiff must do more than allege that she was fired for raising complaints about Santander's security deficiencies "for the safety of . . . members of the public." See Am. Compl. ¶ 56.

### b. Count II: Breach of Contract

To state a breach-of-contract claim under Massachusetts law, a plaintiff must allege that (1) a valid contract between the parties existed; (2) the plaintiff was ready, willing, and able to perform; (3) the defendant breached that contract; and (4) the defendant's breach caused damages. See Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC, No. CV 20-10565-FDS, 2021 WL 231298, at *4 (D. Mass. Jan. 22, 2021). To sustain a breach-of-contract claim, plaintiff "must at least plead facts

that identify who did what to whom, when, where, and why, and explain what obligations were imposed on each of the parties by the alleged contract." Id. at *4 (citations and internal quotations omitted); see also Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007).

Here, the actual contract, alleged breach, and basis for recovery are not clear from the Amended Complaint. Plaintiff alleges that she had an at-will employment contract with Santander, which "Santander's US Team Member Handbook" ("Handbook") "is part of." Am. Compl. ¶ 60; Opp. Brief at 5. The alleged breach appears to be based on the Handbook's anti-discrimination provision, which provides that "[d]iscrimination against or harassment of any Team Member on the basis of . . . any . . . category protected by applicable federal, state and/or local law is strictly prohibited." Am. Compl. ¶ 62; Opp. Brief at 6. According to Plaintiff, the "discriminatory discharge" constituted a breach of the Handbook, and thereby the purported employment contract—despite the contract being terminable at will—because the discharge was in "bad faith." Am. Compl. ¶ 83; Opp. Brief at 5.

Drawing all reasonable inferences (and putting aside that this is merely a recasting of Plaintiff's wrongful discharge claim), Plaintiff's breach-of-contract claim fails at the outset: the allegations do not support Plaintiff's position that she had an enforceable employment contract with Santander.

As to the purported underlying employment contract which Plaintiff alleges the Handbook is "part of," Plaintiff does not describe its existence or terms, such as its execution date, length, the obligations it imposed, or whether it was reduced to writing. Plaintiff's conclusory allegation that she "had an employment agreement or contract with

8

Santander" which "was supported by consideration," without more, is insufficient to plausibly allege the existence of an enforceable contract. Am. Compl. ¶ 64; see Madden, LLC, 2021 WL 231298, at *4 (granting motion to dismiss breach-of-contract claim based on complaint's conclusory allegation that "employment with [defendant] constituted a contractual relationship"); Driscoll v. Simsbury Assocs., Inc., No. 17-CV-12373-ADB, 2018 WL 2139223, at *5 (D. Mass. May 9, 2018) ("To the extent that Plaintiff . . . attempt[s] to argue that a contract existed simply by virtue of her employment, she has cited no legal authority in support of that proposition.").

To the extent Plaintiff purports that an express or implied contract did exist based on the Handbook, she also fails to state a breach-of-contract claim. Whether an employee handbook comprises an enforceable contract under Massachusetts law turns on its content and the circumstances of its distribution, which courts analyze by employing the multi-factor test established in Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 525 (1988). Plaintiff did not include the Handbook as an exhibit despite "incorporat[ing] it . . . and mak[ing] it] part of" her pleading. Am. Compl. ¶ 41. Nor did she cite any language from the Handbook, or put forth any facts, demonstrating the Jackson factors. Id. ¶¶ 42, 44. Conclusory statements and formulaic recitation of the Jackson factors do not suffice. See Lee v. Howard Hughes Med. Inst., 457 F. Supp. 3d 9, 13 (D. Mass. 2020). For the purpose of deciding this motion, because Plaintiff did not include the Handbook as an exhibit, the Court does not consider its language as quoted in Defendant's brief—although, if it is accurate, such language would only further support the Court's determination that the Handbook is not

a binding contract. Accordingly, because Plaintiff failed to demonstrate that she had an enforceable contract with Santander, she cannot maintain her breach-of-contract claim.

> ### c. Count III: Breach of the implied covenant of good faith and fair dealing and Count X: Tortious interference with contractual or advantageous business relations (against Gomez, Diaz, and Lopez only)

Under Massachusetts law, breach of the implied covenant of good faith and fair dealing and tortious inference with contractual relations claims are also predicated upon the existence of an enforceable contract. See Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005) ("The implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached."); Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 537 (1st Cir. 2023) (citations omitted) (tortious interference with contractual relations claims under Massachusetts law require a plaintiff to show that she "had a contract with a third party . . . .").

Here, Plaintiff bases her claims for breach of the implied covenant of good faith and fair dealing and tortious interference with contractual relations upon her purported employment contract with Santander. See Am. Compl. ¶ 116. Her failure to demonstrate the existence of this purported employment contract therefore also necessitates dismissal of Counts III and X. See, e.g., Haglund v. Estee Lauder Companies, Inc., 466 F. Supp. 3d 292, 300 (D. Mass. 2020) (dismissing breach of the covenant of good faith and fair dealing claim because plaintiff failed to demonstrate a contract existed between the parties).

For this reason, the Court need not address all shortcomings of Plaintiff's tortious interference claim, which she attempts to prop up with conclusory labels and a muddled

recounting of her employment discrimination, wrongful termination, and defamation claims. See Am. Compl. ¶¶ 116-120. Plaintiff does not assert a separate claim for tortious interference with advantageous business relations, but to the extent she purports to, her deficient allegations are likewise fatal. See Blackstone v. Cashman, 448 Mass. 255, 260-63 (2007).

### d. Count V: Violation of Civil Rights under MCRA

To state a claim under the Massachusetts Civil Rights Act ("MCRA"), a plaintiff must show that her exercise or enjoyment of her rights secured by the Constitution or laws of the United States or Massachusetts have been subjected to interference, or attempted interference, by the defendants, through threats, intimidation, or coercion. See Diaz v. Devlin, 229 F. Supp. 3d 101, 112 (D. Mass. 2017). Though the statute is remedial in nature, it is not intended create a "vast constitutional tort." Stone v. Caswell, 963 F. Supp. 2d 32, 37 (D. Mass. 2013). "MCRA violations thus typically involve actual or potential physical confrontation accompanied by a threat of harm." Ali v. Univ. of Massachusetts Med. Ctr., 140 F. Supp. 2d 107, 110 (D. Mass. 2001) (citation and quotation omitted).

Here, Plaintiff's MCRA claim is based on Defendants' alleged interference with her rights: (1) "to her employment with Santander"; (2) "to her privacy and reputation not to be defamed"; and (3) "to be protected against discriminatory discharge from employment." Am. Compl. ¶¶ 81, 83. Plaintiff MCRA claim is deficient for several reasons.

As a threshold matter, Plaintiff does not identify any Constitutional amendment or federal or Massachusetts law securing her rights to "her employment with Santander" or

11

"her privacy and reputation not to be defamed." Id. ¶ 81. Plaintiff's conclusory assertion that these "are legally and constitutionally secured rights" does not make them so. Id.

Furthermore, Plaintiff has failed to sufficiently allege that Defendants used threats, intimidation, or coercion to interfere with her rights. Plaintiff's allegations are long on formulaic recitations of the MCRA's elements, and short on specific conduct. To the extent Plaintiff relies on Defendants' termination of her employment to demonstrate threats, intimidation, or coercion, such conduct is insufficient to support an MCRA claim. See Nolan v. CN8, 656 F.3d 71, 77 (1st Cir.2011) ("[T]he termination, or threatened termination, of at-will employees is not coercive in the relevant sense under the MCRA.") (citing Webster v. Motorola, Inc., 418 Mass. 425, 429-30 (1994)).

Plaintiff's lone standing attempt to allege any specific conduct, which appears to apply only to Defendant Santander—i.e., that "[a]mong its several threats, harassments and intimidations, Santander threatened the Plaintiff not to reveal to the other employees that its surveillance camera coverages had limited coverages"—falls well short of what courts have found to constitute coercion, intimidation, and threats under the MCRA. See Bally v. Ne. Univ., 403 Mass. 713, 719 (1989) (collecting cases involving meritorious MCRA claims and noting that they "each involved a physical confrontation accompanied by a threat of harm").

### e. Count IX: Defamation

To state a defamation claim under Massachusetts law, a plaintiff must establish that "(1) the defendant published a defamatory statement of and concerning the plaintiff; (2) the statement was a false statement of fact (as opposed to opinion); (3) the defendant was at fault for making the statement, and any privilege that may have

attached to the statement was abused; and (4) the plaintiff suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss." Barnia v. Kaur, No. 1:22-CV-10216-AK, 2022 WL 17417616, at *9 (D. Mass. Dec. 5, 2022).[5] Claims which are absolutely privileged cannot support a claim of defamation, even if made with malice or in bad faith. See Burke v. Town of Walpole, 405 F.3d 66, 95 (1st Cir. 2005) (citation omitted).

Here, Plaintiff alleges that "Defendants published some information to the Plaintiff's co-workers and some other employees, and also to the Massachusetts unemployment authorities, defaming the Plaintiff by falsely stating that Plaintiff misappropriated Santander's ATM funds" and "[mis]represented [her] as a thief, as a rogue and a dishonest person unfit for the job of a banker." Am. Compl. ¶¶ 27, 107.

Information secured by the Division of Employment Security is ". . . absolutely privileged and shall not be made the subject matter or basis in any action of slander, libel or emotional distress." M.G.L. c. 151A § 46 (a); see Petsch-Schmid v. Bos. Edison Co., 914 F. Supp. 697, 705 (D. Mass. 1996) (dismissing defamation claim concerning employer's alleged statements to unemployment authorities on the ground that such statements are absolutely privileged pursuant to M.G.L. c. 151A § 46); Arsenault v. Alleghany Airlines, Inc., 485 F. Supp. 1373, 1379 (D. Mass. 1980) (same); see also Brown v. Freedman Baking Co., 810 F.2d 6, 10-11 (1st Cir. 1987) (noting that M.G.L. c. 151A § 46's purpose is to enable employers to respond to unemployment authorities' inquiries without fear of liability). Accordingly, Plaintiff cannot maintain her defamation claim based on communications to "Massachusetts unemployment authorities."

---

[5] The Court does not apply Massachusetts' heightened pleading standard for defamation per Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003) (holding that state pleading requirements on causes of action like defamation are irrelevant in federal court even as to claims arising under state law).

Plaintiff's allegation that "Defendants published some information to the Plaintiff's co-workers and some other employees" is also insufficient to survive a motion to dismiss. See Hayes v. Mirick, 378 F. Supp. 3d 109, 116 (D. Mass. 2019) (dismissing defamation claim because allegations were not sufficiently specific). Plaintiff asserts no allegations concerning the means of publication. Nor does she identify by whom, to whom, or when the alleged publication was made. Such threadbare allegations cannot sustain a defamation claim. See Samria Iglesia Evangelica, Inc. v. Lorenzo, Case No. 18-10004-LTS, 2018 WL 3429912, at *4 (D. Mass. July 16, 2018) (dismissing defamation claim where plaintiff "fail[ed] to plead even the context, timing, or recipient of any statement"); see also Whyman v. Whalen, Case No. 16-cv-10049-LTS, 2018 WL 3130630, at *8-9 (D. Mass. June 22, 2018).

IV. **Conclusion**

The partial motion to dismiss (Docket # 12) is ALLOWED. Counts I, II, III, V, IX, and X of Plaintiff's Amended Complaint are dismissed without prejudice.

9/21/23
DATE

_____
RYA W. ZOBEL
SENIOR UNITED STATES DISTRICT JUDGE