United States District Court
District of Massachusetts

```
                              )
Djanine Da Veiga,             )
                              )
          Plaintiff,          )
                              )
     v.                       )     Civil Action No.
                              )     22-11364-NMG
Santander Bank, et al.,       )
                              )
          Defendants.         )
                              )
```

MEMORANDUM & ORDER

GORTON, J.

This case arises from claims of race-based employment discrimination and retaliation brought by plaintiff Djanine Da Veiga ("Da Veiga" or "plaintiff") against her former employer, Santander Bank ("Santander") and two of her supervisors at the bank, Jose Gomez ("Gomez") and Kim Lopez ("Lopez") (collectively, "defendants").[1] In September, 2023, another session of this Court allowed defendants' motion to dismiss Counts I, II, III, V, IX and X (Docket No. 21).

After the reassignment of the case to this session in December, 2023, and a lengthy series of contentious discovery disputes between the parties (one of which remains ongoing), the parties filed cross-motions for summary judgment on the

---

[1] The complaint also names Jose Diaz, who is not an employee of Santander. According to plaintiff's counsel, Diaz was added as a defendant in error and, accordingly, all claims against him will be dismissed.

- 1 -

remaining claims.  Because the Court finds that summary judgment in favor of defendants is warranted, its motion will be allowed and the case will be dismissed.

I.    **Background**

A.    **Facts**[2]

Santander is a commercial bank doing business in Massachusetts.  Da Veiga is an African-American resident of Brockton, Massachusetts, and her nation of origin is Cape Verde. She was an employee of Santander from February, 2014, until her termination in December, 2021.  At all relevant times, Gomez and Lopez were employees of Santander to whom Da Veiga reported. Gomez served as a "Retail District Executive" and Lopez served as an "operations manager."

In February, 2014, Da Veiga was hired as a "Float Retail Banking Personal Representative" at a Santander branch located in Norwood, Massachusetts.  Six months later, she was transferred to the Uphams Corner branch and promoted to the position of "Retail Bank Branch Manager."  In 2017, she was

---

[2] Plaintiff, in her response to defendants' statement of undisputed material facts (Docket No. 172), denies many of the facts set forth herein without citation to admissible evidence.  As such, neither her response nor her self-serving deposition testimony creates a dispute of material fact and the Court will treat the following facts as uncontested. Neshewat v. Titan Corp., No. 03-10841-PBS, 2005 WL 8175869, at *3 n.3 (D. Mass. Nov. 21, 2005); Ramos v. Dep't of Educ., 52 F. Supp. 3d 387, 394-96 (D.P.R. 2014).

relocated to the Brockton, Massachusetts branch ("the Brockton branch") and continued to serve as a branch manager.

Santander regularly conducts random audits of its branches, so-called "Branch Control Inspections" ("BCIs"). In September, 2020, Santander conducted an audit of the Brockton branch, awarding it a score of "needs improvement." The BCI report noted concerns with respect to the branch's compliance with bank policies regarding, among other things, asset verification and control. In December, 2020, Santander issued a written warning to plaintiff for non-compliance with those policies. She challenged some of the findings in that report but nevertheless affirmed that she was responsible for improving compliance going forward. Santander did not otherwise take adverse employment action against Da Veiga, who remained in her role as branch manager.

On October 5, 2021, Santander conducted another BCI audit of the Brockton branch, which again was graded as "needs improvement." The report noted that the operational deficiencies uncovered were "too serious in the aggregate" and that several controls were "in need of immediate improvement." Among the problems highlighted in the report were cash discrepancies and other failures related to one particular ATM at the Brockton branch numbered ATM-D498.

The Santander inspector who conducted the audit recommended that ATM-D498 be placed under a special Santander policy to rectify those errors. The policy, so-called "dual control" refers to a cash management policy that sets a stringent process whereby two employees must handle cash together. When an ATM is placed under dual control, two or more employees must verify cash inventory together and have "eyes on the cash" at all times, e.g., by opening the machine together, removing cash cartridges together and counting the cash together. In other words, a single employee was forbidden from being alone when conducting cash inventories.

The day after receiving the October, 2021, BCI report, Lopez ordered that ATM-D498 be placed under dual control. One week later, Da Veiga reported to Gomez and Lopez that there was a cash shortage of $2,000 in ATM-D498. Da Veiga noted in her report that the ATM was under dual control and that it had been accessed by a technician to service the machine in the preceding few days. Santander's Fraud Operations team subsequently commenced an investigation into the loss. Associate Corey Maack ("Maack") led the investigation.

According to Maack's investigation report ("the Maack Report"), he reviewed video footage recorded by a security camera located where the cash for ATM-D498 is stored. The video showed that the technician did not access the parts of the

machine in which the cash was stored.  The footage did show, however, that Da Veiga had accessed the cash storage spaces on October 8, 2021, i.e., two days after ATM-D498 had been placed under dual control.  On the video, Maack noted, Da Veiga can be seen entering the cash storage room with another Santander employee, Alyssa Gibson ("Gibson").  Da Veiga and Gibson then removed the ATM's cash cartridges and placed them on a table out of view of the security camera.  Gibson is then seen leaving the room and another employee enters but then quickly leaves as well.  The video then shows Da Veiga alone in the ATM room, in contravention of the dual control policy.

The Maack Report further indicates that he interviewed Da Veiga and Gibson as part of his investigation.  Da Veiga initially denied accessing ATM-D498 on October 8, 2021, and then later admits that she had accessed it but claims that the ATM remained under dual control while it was inventoried.  Maack noted that, based on his inspection of the video surveillance, her statement was inaccurate.  Gibson informed Maack that the dual control policy had been violated frequently at the Brockton branch.

The Maack Report concluded that Da Veiga had violated Santander's dual control protocol by allowing Gibson to leave the ATM room, thereby leaving her alone with access to the ATM cash.  As such, he recommended that plaintiff's employment be

terminated based upon that violation. Maack did not recommend that Gibson be terminated or otherwise disciplined.

On October 14, 2021, Maack shared his findings via email to, among other recipients, Gomez and Lisa Irons ("Irons"), an Employee Relations Consultant. Lopez did receive the email. Irons responded, copying Gomez, that she agreed with Maack's recommendation to terminate plaintiff's employment. On December 17, 2021, Gomez and Irons met with Da Veiga and did just that.

Plaintiff filed for unemployment benefits with the Massachusetts Department of Unemployment Assistance ("MDUA") and appealed its initial determination that she did not qualify. Santander did not oppose her appeal and did not present any evidence regarding the reasons behind Da Veiga's termination. As such, the decision was reversed and Da Veiga was deemed entitled to receive unemployment benefits as of December 19, 2021.

B. **Procedural History**

In July, 2022, plaintiff filed a complaint for wrongful discharge in the Massachusetts Superior Court for Plymouth County. Defendants timely removed that action to this Court.

Plaintiff brings ten claims against defendants: Count I, wrongful discharge in violation of public policy; Count II, breach of contract; Count III, breach of the implied covenant of good faith and fair dealing; Count IV, race and national origin

discrimination in violation of M.G.L. c.151B; Count V,
violations of plaintiff's civil rights under M.G.L. c.12 §11I;
Count VI, conspiracy with racial animus in violation of 42
U.S.C. §1985(3); Count VII, conspiracy to hinder provisions of
equal protection and exercise of rights and privileges as a
United States citizen in violation of 42 U.S.C. §1985(3); Count
VIII, action for neglect to prevent in violation of 42 U.S.C.
§1986; Count IX, defamation; and Count X, interference with
contractual or advantageous business relations (against Gomez
and Lopez only).

After dismissal of Counts I, II, III, V, IX and X by
another session of this Court and reassignment of the case, a
series of contentious discovery disputes followed.  Ultimately,
Magistrate Judge Jennifer C. Boal granted defendants' successive
motions for sanctions (Docket Nos. 109, 179) and ordered
plaintiff's attorney to pay defendants' fees and costs for his
violation of various discovery orders (Docket No. 161).  One
motion regarding plaintiff's potential spoliation of evidence
remains pending.

In February, 2025, defendants timely filed a motion for
summary judgment on the remaining claims (Docket No. 126).
Plaintiff submitted a statement of facts in support of her
cross-motion for summary judgment but neglected to file either
the motion itself or a supporting memorandum.  The following

day, she corrected that omission, (Docket No. 135), but defendants thereafter moved to strike her purportedly untimely pleading (Docket No. 140).  Plaintiff cross-moved to strike defendants' motion to strike and submitted a request for attorneys' fees (Docket No. 153).  She also moved for a retroactive extension of her summary judgment deadline and a declaration that her motion was timely filed.

The Court first addresses plaintiff's request for a retroactive extension of time to file her motion for summary judgment.  A determination of whether the summary judgment motion was filed timely directly affects the validity of defendants' request to strike it.

Although the Court finds that plaintiff's counsel has once again missed a Court-imposed deadline (see Docket Nos. 63, 65, 82, 96), it will deny all of the procedural motions and decide the cross-motions for summary judgment on their merits because of the importance of the questions at hand.  That does not excuse the dilatory conduct of plaintiff's counsel but simply puts it into perspective.

## II.  Cross-Motions for Summary Judgment

### A.    Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d

816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc.,
895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving
party to show, through the pleadings, discovery and affidavits,
"that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).

A fact is material if it "might affect the outcome of the
suit under the governing law." Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).  A genuine issue of material fact
exists where the evidence with respect to the material fact in
dispute "is such that a reasonable jury could return a verdict
for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts
to the nonmoving party to set forth specific facts showing that
there is a genuine, triable issue. Celotex Corp. v. Catrett, 477
U.S. 317, 324 (1986).  The Court must view the entire record in
the light most favorable to the non-moving party and make all
reasonable inferences in that party's favor. O'Connor v.
Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is
appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law. Celotex, 477 U.S. at 322-23.

- 9 -

### B.   Application

#### 1.   Count IV: Racial and National Origin Discrimination

Defendants first move for summary judgment on Count IV, which alleges that defendants discriminated against Da Veiga on the basis of her race and national origin, in violation of Massachusetts General Laws Chapter 151B ("Chapter 151B").

To prove a discrimination claim under Chapter 151B, Da Veiga must prove "membership in a protected class, harm, discriminatory animus, and causation." Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 83 (1st Cir. 2004) (quoting Lipchitz v. Raytheon Co., 434 Mass. 493, 502 (2001)).

Here, it is undisputed that Da Veiga lacks direct evidence that Santander's actions were motivated by discriminatory animus.  Thus, to survive summary judgment, Da Veiga must withstand the three-part, burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which is used to evaluate claims of discriminatory treatment under both federal and state anti-discrimination laws.  See Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 97 (2009).

Under that framework, plaintiff must first establish a prima facie case of discrimination, defendant must counter that with a legitimate, nondiscriminatory reason for its employment action and, if so, the burden shifts back to plaintiff to

produce evidence demonstrating that defendant's stated reason
was a pretext. Grol v. Safelite Grp., Inc., 297 F. Supp. 3d 241,
245 (D. Mass. 2018) (citing Haddad, 455 Mass. at 97 n.14).

Assuming arguendo that Da Veiga satisfied the first step of
the McDonnell Douglas analysis, her claim nonetheless fails.
Defendants offer a legitimate, nondiscriminatory explanation for
her termination which Da Veiga fails to rebut as pretextual.

The undisputed facts show that Irons decided to terminate
Da Veiga for the legitimate, nondiscriminatory reason that Da
Veiga had violated company policy. See, e.g., Gunther v. Gap,
Inc., 1 F. Supp. 2d 73, 78 (D. Mass. 1998) (violating company
policy requiring managers to ensure stores are properly
supervised and staffed at all times); Thompson v. Coca-Cola Co.,
522 F.3d 168, 177 (failing to follow procedures to request and
extend vacation leave); Kuc v. Smith & Nephew, Inc., No. 19-
11402-FDS, 2022 WL 444826, at *11-12 (D. Mass. Feb. 14,
2022)(falsifying inspection documents and failing to follow
inspection protocols).  Irons and Gomez received and reviewed
the Maack Report, which concluded that Da Veiga had violated
Santander's dual control policy and recommended her termination.
In response, Irons stated that she agreed with the
recommendation to terminate Da Veiga's employment given her
violation of company policy.

Da Veiga counters, in error, that defendants are estopped from litigating the question of whether their justification for her termination was legitimate and nondiscriminatory because the MDUA already ruled on that issue. Not so. The Massachusetts Supreme Judicial Court ("SJC") has explicitly ruled that MDUA findings may not have preclusive effect on defendant-employers when defending wrongful discharge cases. Tuper v. N. Adams Ambulance Serv., Inc., 428 Mass. 132, 136 (1998).

Da Veiga further contends that she did not, in fact, violate the dual control policy. That is irrelevant. Whether the motivation behind her termination was discriminatory is, ultimately, a question of subjective intent. As such, the focus of the inquiry is on whether the employer "believe[d] in the accuracy of the reason given for the adverse employment action." Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31, 35 (1st Cir. 2012) (citing Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 67 (1st Cir. 2008)). Da Veiga offers nothing to suggest that Irons or Gomez did not believe the accuracy of the allegations in the Maack Report.

Finally, Da Veiga offers, as evidence of pretext, that she was treated differently from similarly situated persons who were not African-American or of Cape Verdean origin. Plaintiff relies heavily on the treatment of Gibson, who was reprimanded, but not terminated, for her violation of the dual control policy

with Da Veiga.  Gibson, as an employee who reports to Da Veiga
as her supervisor, is not, however, similarly situated.  <u>See</u>
<u>Woodward</u> v. <u>Emulex Corp.</u>, 714 F.3d 632, 639 (1st Cir. 2013)
(concluding that employees who held positions senior to
plaintiff were not similarly situated); <u>Vasquez</u> v. <u>Cnty. of Los</u>
<u>Angeles</u>, 349 F.3d 634, 641 (9th Cir. 2003) ("Employees in
supervisor positions are generally deemed not to be similarly
situated to lower-level employees.").  Da Veiga's reliance on
Gibson's treatment is unavailing.

    Da Veiga attempts to buttress her claims of disparate
treatment by alleging, without citation, that other employees
(both named and unnamed) were not fired for policy violations.
But those unsupported allegations do not a genuine dispute of
fact make. <u>See</u> <u>Anderson</u>, 477 U.S. at 256.  Plaintiff was
required to

> go beyond the pleadings and by [her] own affidavits,
> or by the depositions, answers to interrogatories, and
> admissions on file, designate specific facts showing
> that there is a genuine issue for trial.

<u>Celotex</u>, 477 U.S. at 324 (cleaned up).  Da Veiga has not met
that burden.  She cites no admissible evidence that would
support her speculative allegations. <u>See</u> <u>Medina-Rivera</u> v. <u>MVM,</u>
<u>Inc.</u>, 713 F.3d 132, 139-40 (1st Cir. 2013) (holding that where
employee relied "on her say-so [and did not] support her
rhetoric with hard proof, . . . her charge amount[ed] to no more

than conclusory speculation, which cannot block summary judgment" or establish a prima facie case).

Summary judgment for defendants is therefore warranted on plaintiff's discrimination claim.

### 2.    Counts VI, VII and VIII: Discrimination Conspiracy

Finally, defendants move for summary judgment on Counts VI, VII and VIII which, together, allege a conspiracy to interfere with Da Veiga's civil rights and neglect to prevent such a conspiracy.

Counts VI and VII are brought under 42 U.S.C. § 1985(3), which prohibits conspiring to deprive a United States citizen of "the equal protection of the laws, or of equal privileges and immunities under the law."  An actionable claim under §1985(3) requires a showing that

> 1) the defendants entered into a conspiracy, 2) the purpose
> of the conspiracy was to deprive the plaintiff of the right
> to equal protection or equal privileges and immunities
> under the law, 3) the defendants committed an "overt act in
> furtherance of the conspiracy" and 4) the plaintiff
> suffered injury to person or property or was deprived of a
> constitutionally protected right.

Enwonwu v. Drivers Staffing Inc., 881 F. Supp. 2d 238, 241 (D. Mass. 2012) (quoting Uphoff Figueroa v. Alejandro, 597 F.3d 423, 432 (1st Cir. 2010).  Plaintiff must also show that the conspiracy was "motivated by a racial or otherwise class-based

inviduously discriminatory animus." <u>Canney</u> v. <u>City of Chelsea</u>,
925 F. Supp. 58, 68 (D. Mass. 1996).

Da Veiga has proffered no admissible evidence to
demonstrate either the existence of a conspiracy or a
discriminatory animus motivating the decision to terminate her.
To prove a conspiracy, plaintiff must proffer facts "indicating
an agreement among the conspirators to deprive the plaintiff of
her civil rights." <u>Parker</u> v. <u>Landry</u>, 935 F.3d 9, 18 (1st Cir.
2019).  Plaintiff does not meet her burden because she has
simply provided the Court with

> [v]ague and conclusory allegations about persons working
> together, with scant specifics as to the nature of their
> joint effort or the formation of their agreement . . . .

<u>Alston</u> v. <u>Spiegel</u>, 988 F.3d 564, 578 (1st Cir. 2021).

No substantive evidence has been proffered.  The Court
finds nothing in the record indicating that Gomez and Lopez
communicated about the decision to terminate Da Veiga.  Rather,
Irons (who is not a defendant in this case) ordered that Da
Veiga be terminated.  Gomez merely carried out that directive.
And just as with Count IV, plaintiff produces neither direct nor
indirect evidence of racial or other class-based animus in
connection with her termination.  She admits in her deposition
that she never heard either Lopez or Gomez make any comments
that could be construed as discriminatory.

Finally, defendants move to dismiss Count VIII, alleging that defendants violated §1986 through a conspiracy because they failed to prevent a violation of §1985.  "A prerequisite for a claim under Section 1986 is the existence of a conspiracy actionable under Section 1985." <u>Lowden</u> v. <u>William M. Mercer, Inc.</u>, 903 F. Supp. 212, 218 (D. Mass. 1995) (quoting <u>Chemlen</u> v. <u>Giulmette</u>, No. 89-2308-NG, 1994 WL 548135, at *5 n.8 (D. Mass. Aug. 30, 1994)) (internal quotation marks omitted).  Because this Court finds there was no conspiracy to support a §1985 claim, plaintiff's §1986 claim is unavailing.

ORDER

For the foregoing reasons,

- defendants' motion to strike (Docket no. 140) is **DENIED;**

- plaintiff's motion to strike (Docket No. 153) is **DENIED;**

- plaintiff's motion for extension of time (Docket No. 159) is **DENIED;**

- plaintiff's motion for summary judgment (Docket No. 135) is **DENIED;** and

- defendants' motion for summary judgment (Docket No. 126) is **ALLOWED.**

So ordered.

Nathaniel M. Gorton
United States District Judge

Dated:  June 4 , 2025